OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Justine Michael, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.
     The State of Ohio, Appellee, v. Wyant, Appellant.
     The State of Ohio, Appellant, v. May, Appellee.
     The State of Ohio, Appellant, v. Staton et al., Appellees.
     The State of Ohio, Appellant, v. Van Gundy et al.,
Appellees.
     [Cite as State v. Wyant (1992),     Ohio St.3d    .]
Criminal law -- Ethnic intimidation -- R.C. 2927.12
     unconstitutional.
The effect of R.C. 2927.12 is to create a "thought crime," in
     violation of Section 11, Article I of the Ohio
     Constitution, and the First and Fourteenth Amendments to
     the United States Constitution.
     (Nos. 91-199, 91-1519 and 91-1211/91-1589--Submitted April
15, 1992--Decided August 26, 1992.)
     Appeal from the Court of Appeals for Delaware County, No.
90-CA-2.
     Certified by the Court of Appeals for Montgomery County,
Nos. 12239, 12259 and 12260.
     Appeal from and Certified by the Court of Appeals for
Franklin County, Nos. 90AP-473, 90AP-474, 90AP-475, 90AP-477,
90AP-478, 90AP-479 and 90AP-480.
                Wyant Case: case No. 91-199
     On May 29, 1989 appellant David Wyant and his wife rented
campsite L-16 at Alum Creek State Park.  On May 31, the Wyants'
relatives came to join them, and rented L-17, the adjoining
campsite.  On June 2, Wyant rerented his site, but released the
relatives' site, as they were to leave that day.  Later in the
day plans changed, and Wyant attempted to rerent site L-17.  He
was told that the site had been rented to someone else, and so
he rented L-18.
     Site L-17 had been rented to the complaining witnesses,
Jerry White, and his girlfriend, Patricia McGowan.  White and
McGowan are black; everyone in the Wyant party is white.  There
was little contact between the groups for most of the evening
of June 2nd, but sometime between 10:30 and 11:45 p.m., White
went to park officials to complain of loud music coming from
the Wyant campsite.  A park official went to site L-16 and
asked Wyant to turn off the radio.  Wyant complied.
     Fifteen or twenty minutes later the radio came on again,

and White and McGowan heard racial epithets and threats made in a loud voice by Wyant. Specifically, Wyant was heard to say: "We didn't have this problem until those niggers moved in next to us," "I ought to shoot that black mother fucker," and "I ought to kick his black ass." White and McGowan complained to park officials and left the park.

Wyant was indicted and convicted on one count of ethnic intimidation, R.C. 2927.12, predicated on aggravated menacing, and sentenced to one and one-half years' imprisonment. The court of appeals affirmed the conviction. The cause is before the court pursuant to the allowance of a motion for leave to appeal.

### May Case: case No. 91-1519

Defendant James May, Jr. was charged with ethnic intimidation predicated on aggravated menacing. He moved to dismiss. The trial court dismissed on the grounds that R.C. 2927.12 is unconstitutional. The May case was consolidated with the Plessinger/Staton case on appeal.

### Plessinger/Staton Case: case No. 91-1519

Defendants Aaron Plessinger and Mark Staton were charged with ethnic intimidation predicated on aggravated menacing. They moved to dismiss on the grounds that R.C. 2927.12 is unconstitutional, and on the authority of the court's decision in the May case. The trial court dismissed. Upon motion by the state, the court of appeals consolidated the May case with the Plessinger/Staton case. The court of appeals affirmed the trial court's dismissal of the ethnic intimidation charges, but reversed and remanded for prosecution on the aggravated menacing charges. Finding its judgment to be in conflict with that of the Fifth District Court of Appeals in State v. Wyant (Dec. 6, 1990), Delaware App. No. 90-CA-2, unreported, the court certified the record of the case to this court for review and final determination.

### Van Gundy Case: case Nos. 91-1211/91-1589

Defendants Clancy Van Gundy, Casey Van Gundy, Franklin D. Clay, Robert Blazer, Bryan Krebs, Charles Culp, and Terry Breedlove, Jr. were each charged with seven counts of ethnic intimidation predicated on aggravated menacing. Clancy Van Gundy was also charged with felonious assault. He was tried and convicted on this charge. See State v. Van Gundy (1992),     Ohio St.3d 130, 594 N.E.2d 604. The trial court dismissed the ethnic intimidation counts, holding that R.C. 2927.12 is unconstitutional. The court of appeals affirmed, and, also finding its judgment to conflict with State v. Wyant, certified the record of the case to this court for review and final determination. This cause is also before the court pursuant to a motion for leave to appeal (case No. 91-1211). We hereby allow the motion.

W. Duncan Whitney, Prosecuting Attorney, and Sue Ann Reulbach, for appellee in case No. 91-199.

Lee C. Falke, Prosecuting Attorney, and Lorine M. Reid, for appellant in case No. 91-1519.

Michael Miller, Prosecuting Attorney, Joyce S. Anderson and Katherine J. Press, for appellants in case Nos. 91-1211/91-1589.

Lee I. Fisher, Attorney General, Simon B. Karas and Eric

A. Walker as supplementary counsel, for appellee in case No. 91-199 and appellants in case Nos. 91-1211/91-1589 and 91-1519.

Randall M. Dana, Ohio Public Defender, Susan B. Gellman and Robert L. Lane, for appellant in case No. 91-199.

Terry L. Lewis, for appellee James B. May, Jr. in case No. 91-1519.

Gary C. Schaengold, for appellee Mark J. Staton in case No. 91-1519.

Gary W. Crim, for appellee Aaron L. Plessinger in case No. 91-1519.

Wonnell, Janes & Wonnell Co., L.P.A., and Harold E. Wonnell, for appellee Clancy Van Gundy in case Nos. 91-1211/91-1589.

Andrew E. Lyles, for appellee Casey Van Gundy in case Nos. 91-1211/91-1589.

Samuel B. Weiner, for appellee Franklin D. Clay in case Nos. 91-1211/91-1589.

James Kura, Franklin County Public Defender, Allen V. Adair and Carole B. Schneider, for appellee Robert Eric Blazer in case Nos. 91-1211/91-1589.

Tyack & Blackmore Co., L.P.A., and Thomas M. Tyack, for appellee Bryan Krebs in case Nos. 91-1211/91-1589.

Arnold S. White, Daniel T. Kobil and Susan B. Gellman, for appellee Charles Culp in case Nos. 91-1211/91-1589.

Terry Breedlove, Jr., pro se, in case Nos. 91-1211/91-1589.

Bruce W. Sanford and Robert M. O'Neil, urging reversal for amicus curiae, Thomas Jefferson Center for the Protection of Free Expression in case No. 91-199.

Thomas A. Schaffer and Annabelle Whiting Hall, urging reversal for amicus curiae, National Association of Criminal Defense Lawyers in case No. 91-199, and affirmance in case Nos. 91-1211/91-1589.

Reinhart Law Office and Harry R. Reinhart; Eslocker, Grim, Hodson & Dioguardi and Nicholette Dioguardi, urging reversal for amicus curiae, Ohio Association of Criminal Defense Lawyers in case No. 91-199 and affirmance in case Nos. 91-1211/91-1589.

Kevin Francis O'Neill, Ohio Legal Director, urging reversal for amicus curiae, American Civil Liberties Union of Ohio Foundation, Inc. in case No. 91-199.

Robert D. Horowitz, Stark County Prosecuting Attorney, Kristine Wilson Rohrer and John E. Murphy, Executive Director; and Paul Cox, urging affirmance for amici curiae, Ohio Prosecuting Attorney's Association, Fraternal Order of Police and Buckeye State Sheriff's Association in case No. 91-199.

Ronald J. O'Brien, City Attorney, Marcee C. McCreary, City Prosecutor, and Thomas K. Lindsey, urging reversal for amicus curiae, city of Columbus in case Nos. 91-1211/91-1589.

Jones, Day, Reavis & Pogue, Steven T. Catlett and Richard A. Cordray; Schwartz, Kelm, Warren & Rubenstein and Nelson E. Genshaft; Ruth L. Lansner, Steven M. Freeman and Michael Sandburg, urging reversal for amicus curiae, Anti-Defamation League in case Nos. 91-1211/ 91-1589.

Alphonse A. Gerhardstein, urging reversal for amici curiae, Housing Opportunities Made Equal (HOME), East Suburban Council for Open Communities, Toledo Fair Housing Center, Cincinnati Human Relations Commission and National Fair Housing Alliance in case Nos. 91-1211/91-1589.

Herbert R. Brown, J.    The principal issue before us is the constitutionality of the ethnic intimidation statute, R.C. 2927.12.  Before undertaking an analysis of the statute, however, we express our abhorrence for racial and ethnic hatred, and especially for crimes motivated by such hatred.  We fully accept the premise which prompted the enactment of the legislation before us:  that bigotry, whether expressed merely in words or by violence, does harm to its victims and to society as a whole.

The ethnic intimidation statute is a well-intentioned response to a society-threatening problem.  However, the legislative response to this problem must not violate the Ohio and United States Constitutions.  For the following reasons, we find R.C. 2927.12 unconstitutional.

## I
## The Statute

R.C. 2927.12 reads:

"(A) No person shall violate section 2903.21, 2903.22, 2909.06, or 2909.07, or division (A)(3), (4), or (5) of section 2917.21 of the Revised Code by reason of the race, color, religion, or national origin of another person or group of persons.

"(B) Whoever violates this section is guilty of ethnic intimidation.  Ethnic intimidation is an offense of the next higher degree than the offense the commission of which is a necessary element of ethnic intimidation."

The statute creates enhanced criminal penalties for some people who commit aggravated menacing (R.C. 2903.21),[1] menacing (R.C. 2903.22),[2] criminal damaging or endangering (R.C. 2909.06),[3] criminal mischief (R.C. 2909.07),[4] or certain types of telephone harassment (R.C. 2917.21[A][3], [4], or [5]).[5]

The predicate offenses to ethnic intimidation are  already punishable acts under other statutes.  Thus the enhanced penalty must be for something more than the elements that constitute the predicate offense.  Our analysis begins with the identification of the "something more" that is punished under R.C. 2927.12, but which is not an element of the underlying statutory offense.  R.C. 2927.12 adds only that the violation of one of the predicate statutes be "by reason of the race, color, religion, or national origin of another person or group of persons."  (Emphasis added.)  The statute specifies no additional act or conduct beyond what is required to obtain a conviction under the predicate statutes.  Thus the enhanced penalty results solely from the actor's reason for acting, or his motive.[6]  We must decide whether a person's motive for committing a crime can support either a separate, additional crime, or an enhanced penalty for an existing crime.

## II
## Criminalization of Motive

Motive, in criminal law, is not an element of the crime. In their textbook, 1 Substantive Criminal Law (1986) 318, Section 3.6, LaFave and Scott argue that if defined narrowly enough, motive is not relevant to substantive criminal law, although procedurally it may be evidence of guilt, or, in the case of good motive, may result in leniency.  Other thought-related concepts such as intent and purpose are used in

the criminal law as elements of crimes or penalty-enhancing criteria, but motive itself is not punished. Id. at 318-324; see, also, State v. Lampkin (Oct. 3, 1990), Hamilton App. No. C-890273, unreported, at 5: "While motive may be relevant as a mitigating factor in the penalty phase, it is irrelevant to the guilt-phase determination * * *"; Gellman, Sticks and Stones Can Put You in Jail, but Can Words Increase Your Sentence? Constitutional and Policy Dilemmas of Ethnic Intimidation Laws (1991), 39 UCLA L.Rev. 333.

There is a significant difference between why a person commits a crime and whether a person has intentionally done the acts which are made criminal. Motive is the reasons and beliefs that lead a person to act or refrain from acting. The same crime can be committed for any of a number of different motives. Enhancing a penalty because of motive therefore punishes the person's thought, rather than the person's act or criminal intent.

Application of the Ohio and United States Constitutions to the statute before us requires careful attention to the distinctions between motive and intent as well as the line which separates a thought from an act. These distinctions can best be understood in the context of specific applications which arise in criminal jurisprudence.

A

Motive versus Criminal Intent

Culpable mental state, or intent, is usually required to find one guilty of a crime.7 "Intent" refers to the actor's state of mind or volition at the time he acts. Did A intend to kill B when A's car hit B's, or was it an accident? This is not the same as A's motive, which is why A intentionally killed B.8 When A murders B in order to obtain B's money, A's intent is to kill and the motive is to get money. LaFave and Scott, supra, at 319. One can have motive without intent, or intent without motive. For instance, the wife of a wealthy but disabled man might have a motive to kill him, and yet never intend to do so. A psycopath, on the other hand, may intend to kill and yet have no motive.

B

Motive versus Purpose to Commit Another Criminal Act

Purpose to commit an additional criminal act is frequently seen in criminal statutes as a basis for enhanced penalty or as creating a separate, more serious crime. For example, burglary is a trespass "with purpose" to commit a theft offense or felony.9 Purpose in this context is not the same as motive. What is being punished is the act of trespass, plus the additional act of theft, or the intent to commit theft. Upon trespassing, A's intent is to commit theft, but the motive may be to pay debts, to buy drugs, or to annoy the owner of the property.10 The object of the purpose is itself a crime. Thus the penalty is not enhanced solely to punish the thought or motive.

Criminal penalties are often enhanced using the concept of an aggravating circumstance. These also are distinguishable from motive. For example, under R.C. 2929.04, any of a number of aggravating circumstances can increase the penalty for aggravated murder to death.11 Among these is murder committed "for the purpose of" escaping another offense. R.C. 2929.04

(A)(3).  The basis for enhancing the penalty in this case is once again an additional act or intent.  Escaping another offense is in itself a crime.  The enhanced penalty for murder does not stem from motive (i.e., preference of life on the street to life in prison), but from the additional act of escape, or the intent to escape.

C

Motive versus Criminal Act

R.C. 2929.04(A)(2) declares murder for hire to be an aggravating circumstance.  This is not properly seen as enhancing the penalty for a mercenary motive.  Hiring is a transaction.  The greater punishment is for the additional act of hiring or being hired to kill.  The motive for the crime (such as jealousy, greed or vengeance) is not punished.

Some aggravating circumstances involve the identity of the victim, such as a peace officer or governmental official.  R.C. 2929.04 (A)(1), (6).  The legislature has decided, in these instances, that acts against certain individuals are more serious criminal acts.  Imposing a higher penalty for killing the Governor than for killing an ordinary citizen is similar to imposing a higher penalty for stealing a painting worth $1,000 than for stealing one worth only $5.

Under the above analysis, the legislature could decide that blacks are more valuable than whites, and enhance the punishment when a black is the victim of a criminal act.  Such a statute would pass First Amendment analysis because the motive or the thought which precipitated the attack would not be punished.  However, R.C. 2927.12 could not have been written that way because such a statute would not survive analysis under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

D

Motive in the Antidiscrimination Laws

Federal and state laws against discrimination in employment, housing and education do prohibit acts committed with a discriminatory motive.  However, they are analytically distinct in several ways from the statute in question here.  It is the act of discrimination that is targeted, not the motive.

There are two theories by which a case can be made under the federal laws against employment discrimination; these are characterized as "disparate impact" and "disparate treatment." Under a disparate-impact analysis, an employment practice that is neutral on its face, but falls more harshly on a protected group, can be used to show employment discrimination.  Griggs v. Duke Power Co. (1971), 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158; Teamsters v. United States (1977), 431 U.S. 324, 335-336, 97 S.Ct. 1843, 1854-1855, 52 L.Ed.2d 396, 415, fn. 15.  No discriminatory motive is necessary under this analysis.

Under a disparate-treatment analysis, the employer treats some people less favorably than others because of race, color, religion, sex or national origin.  Discriminatory motive is necessary to this theory.  Id.  However, proof of discriminatory motive can be inferred from differences in treatment.  Arlington Hts. v. Metro. Hous. Dev. Corp. (1977), 429 U.S. 252, 265-266, 97 S.Ct. 555, 563-564, 50 L.Ed.2d 450, 464-465.  It is discriminatory treatment that is the object of

punishment, not the bigoted attitude per se. "* * * Congress directed the thrust of the Act to the consequences of employment practices, not simply the motivation." Griggs, supra, at 432, 91 S.Ct. at 854, 28 L.Ed.2d at 165. It is the act of discrimination which is punished, not the thoughts (or bigotry) of the actor. Bigoted motive by itself is not punished, nor does proof of motive enhance the penalty when a discriminatory act is being punished.

III

The Constitutional Objection to Punishment of Thought

Neither the United States nor the Ohio Constitution explicitly prohibits the punishment of thought. Both guarantee the right to freedom of speech.12 Federal First Amendment jurisprudence has long recognized that freedom of speech presupposes freedom of thought. As Justice Stewart said in Abood v. Detroit Bd. of Edn. (1977), 431 U.S. 209, 234-235, 97 S.Ct. 1782, 1799, 52 L.Ed.2d 261, 284:

"[A]t the heart of the First Amendment is the notion that an individual should be free to believe as he will, and that in a free society one's beliefs should be shaped by his mind and his conscience rather than coerced by the State."

Likewise, Justice Jackson in West Virginia State Bd. of Edn. v. Barnette (1943), 319 U.S. 624, 642, 63 S.Ct. 1178, 1187, 87 L.Ed. 1628, 1639, stated as follows:

"If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion * * *."

And Justice Marshall in Stanley v. Georgia (1969), 394 U.S. 557, 565-566, 89 S.Ct. 1243, 1248-1249, 22 L.Ed.2d 542, 550, stated as follows:

"* * * Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds.

"* * * [The State] cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts."

Such statements are made in the context of cases in which laws regulate speech or expressive conduct of some kind. The question before us is not whether the government can regulate the conduct itself. Clearly the government can, and has already done so by criminalizing the behavior in the predicate statutes.13 The issue here is whether the government can punish the conduct more severely based on the thought that motivates the behavior.

Under the First Amendment there are unprotected forms of expression. The state is allowed to punish those utterances that "are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." Chaplinsky v. New Hampshire (1942), 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031, 1035. It does not follow, however, that there are unprotected forms of belief.

The freedoms of speech, press, religion and assembly are guaranteed together in the First Amendment because they share a core value: the freedom of an individual to frame his thoughts and beliefs. The Constitution of Ohio is even more specific;

it guarantees to every citizen freedom to "speak, write, and publish his sentiments on all subjects."  It follows that a citizen of Ohio is free to have "sentiments on all subjects."

By enacting R.C. 2927.12, the state has infringed this basic liberty.  Once the proscribed act is committed, the government criminalizes the underlying thought by enhancing the penalty based on viewpoint.  This is dangerous.  If the legislature can enhance a penalty for crimes committed "by reason of" racial bigotry, why not "by reason of" opposition to abortion, war, the elderly (or any other political or moral viewpoint)?14

Within constitutional bounds, the legislature determines what constitutes a crime.  We review that determination only to see if it comports with the Ohio and United States Constitutions.  If the thought or motive behind a crime can be separately punished, the legislative majority can punish virtually any viewpoint which it deems politically undesirable, for example, a crime committed because the perpetrator (a) dislikes homosexuals, (b) likes homosexuals, (c) likes or dislikes the elderly--and so on.  It requires little imagination to see the ramifications.

We recognize and are sensitive to the emotionally charged nature of the issues involved.  We reemphasize that we in no way condone the acts and alleged acts that bring these cases before us.  However, the very reason for the First Amendment and Section 11, Article I is to protect the individual against a state that is hostile simply because of the person's belief.  The constitutional protection accorded to beliefs is most important when the beliefs are reviled by society.  As Justice Douglas of this court has said:

"This guarantee of freedom is one of our most cherished rights and, as such, has been and continues to be under attack by persons, well-meaning and otherwise, who see attempted curtailment as being in the 'public good.' * * * It is important to often repeat that the freedoms * * * guaranteed by the First Amendment must be accorded to the ideas we hate or sooner or later they will be denied to the ideas we cherish."  Local Lodge 1297 v. Allen (1986), 22 Ohio St.3d 228, 236, 22 OBR 407, 414, 490 N.E.2d 865, 872 (Douglas, J. concurring)

Justice Black, in his seminal dissent in Beauharnais v. Illinois (1952), 343 U.S. 250, 274, 72 S.Ct. 725, 739, 96 L.Ed. 919, 936, put the issue as follows:

"* * * The motives behind the state law may have been to do good.  But the same can be said about most laws making opinions punishable as crimes.  History indicates that urges to do good have led to the burning of books and even to the burning of 'witches.'"

Justice Black's position has become the accepted one in First Amendment jurisprudence.  Justice Burger addressed the issue in Houchins v. KQED, Inc. (1978), 438 U.S. 1, 13, 98 S.Ct. 2588, 2596, 57 L.Ed.2d 553, 564:  "We must not confuse what is 'good,' 'desirable,' or 'expedient' with what is constitutionally commanded by the First Amendment."

Applying these principles, we believe that the government is not free to punish an idea, though it may punish acts motivated by the idea.  It may also punish unprotected speech expressing the idea.

The United States Supreme Court recently addressed the constitutionality of another so-called "hate crimes" law. R.A.V. v. St. Paul (1992), 505 U.S.    , 112 S.Ct. 2538, 120 L.E.2d 305.  The St. Paul ordinance reads:

"'Whoever places on public or private property a symbol, object, appellation, characterization or graffiti, including, but not limited to, a burning cross or Nazi swastika, which one knows or has reasonable grounds to know arouses anger, alarm or resentment in others on the basis of race, color, creed, religion or gender commits disorderly conduct and shall be guilty of a misdemeanor.'"  Id., 505 U.S. at    , 112 S.Ct. at 2541, 120 L.Ed.2d at 315.

The St. Paul ordinance is aimed at specific conduct; that is, conduct which will arouse anger, alarm or resentment on the basis of race, color, creed, religion or gender.  The Minnesota Supreme Court rejected an overbreadth claim because the ordinance had been construed to include only unprotected "fighting words."  Despite this construction, the United States Supreme Court found the ordinance facially unconstitutional under the First Amendment.  Justice Scalia, writing for the court, said that even the few limited categories of unprotected speech are not "entirely invisible to the Constitution."  Id. at    , 112 S.Ct. at 2543, 120 L.Ed.2d at 318.  The government may not regulate even fighting words based on a hostility toward the message they contain.  Any proscription of fighting words must not be based on content.  The court observed that the St. Paul ordinance went beyond content discrimination to viewpoint discrimination.

Quite recently the Supreme Court of Wisconsin struck down the Wisconsin "hate crimes" statute as "unconstitutionally infring[ing] upon free speech."  State v. Mitchell (June 23, 1992),    Wis.2d   ,   ,    N.W.2d 807, 808.  The Wisconsin law is a penalty-enhancement statute with some similarities to R.C. 2927.12.  The Wisconsin statute does not use the phrase "by reason of," but instead permits a penalty enhancement for certain crimes when the defendant "[i]ntentionally selects" the victim "because of the race, religion, color, disability, sexual orientation, national origin or ancestry" of the victim.  Wis.Stat. 939.645 (1989-90).  Despite this wording, the Wisconsin court said:  "[The statute] is expressly aimed at the bigoted bias of the actor.  Merely because the statute refers in a literal sense to the intentional 'conduct' of selecting, does not mean the court must turn a blind eye to the intent and practical effect of the law--punishment of offensive motive or thought."  Id. at    , 485 N.W.2d at 813.  The analysis by the Wisconsin court applies with greater force to the Ohio statute.  R.C.2927.12 refers to the actor's reasons in direct, rather than indirect, terms and is more clearly aimed at punishment of bigoted thought.

R.C. 2927.12 constitutes a greater infringment on  speech and thought than either the St. Paul or Wisconsin "hate crimes" laws.  R.C. 2927.12 specifically punishes motive, and motive alone, not action or expression.  The Ohio statute singles out racial and religious hatred as a viewpoint to be punished.  It is the regulation of viewpoint that most particularly violates the Ohio and federal Constitutions.

Based upon the foregoing authorities and our analysis of

the statute, we find that the effect of R.C. 2927.12 is to create a "thought crime." This violates Section 11, Article I of the Ohio Constitution, and the First and Fourteenth Amendments to the United States Constitution.

Conduct motivated by racial or religious bigotry can be constitutionally punished under the criminal code without resort to constructing a thought crime. In fact, the behavior which is alleged in each case before us can be punished under the criminal statutes identified in R.C. 2927.12. We agree with Justice Scalia when he observed that the government "has sufficient means at its disposal to prevent such behavior without adding the First Amendment to the fire." R.A.V. v. St. Paul, supra, 505 U.S. at ___, 112 S.Ct. at 2550, 120 L.Ed.2d at 326.

The parties also make constitutional challenges to R.C. 2927.12 on the grounds of (1) vagueness, (2) equal protection, (3) due process and (4) overbreadth. These arguments may have merit, especially in view of the concurring opinion by Justice White in R.A.V. v. St. Paul, supra, 505 U.S. at ___, 112 S.Ct. at 2550, 120 L.Ed.2d at 327. However, because of our holding we need not address these challenges.

IV

The Specific Cases Before Us

Having so held, we turn to the specific cases which are before us. Constitutional protection of thought does not shield a citizen from punishment for proscribed acts. Although the ethnic intimidation statute is invalid, the predicate offenses are punishable. As these offenses are mentioned specifically in R.C. 2927.12, they constitute lesser included offenses to ethnic intimidation.

In case No. 91-199, the jury was instructed that it could find David Wyant guilty of ethnic intimidation only if it first found him guilty of aggravated menacing. The verdict indicates that the jury found him guilty of aggravated menacing.

In case Nos. 91-1519 and 91-1211/91-1589, although the defendants cannot be tried under R.C.2927.12, the lesser included offenses remain viable charges.

Based on the foregoing, in case No. 91-199 we reverse the court of appeals, vacate sentence on the conviction for ethnic intimidation, and remand for sentencing on the charge of aggravated menacing. We affirm the judgment of the court of appeals in case No. 91-1519. In case Nos. 91-1211/91-1589, we affirm the dismissal for ethnic intimidation, but remand for further proceedings on the underlying aggravated menacing charges.

Judgments accordingly.

In Case Nos. 91-199 and 91-1519:

Moyer, C.J., Sweeney, Holmes, Douglas, Wright and Resnick, JJ., concur.

In Case Nos. 91-1211 and 91-1589:

Moyer, C.J., Utz, Holmes, Douglas, Wright and Resnick, JJ., concur.

Eugene J. Utz, J., of the First Appellate District, sitting for Sweeney, J.

FOOTNOTES:

1 R.C. 2903.21 (aggravated menacing) reads in part:

"(A) No person shall knowingly cause another to believe

that the offender will cause serious physical harm to the person or property of such other person or member of his immediate family."

2  R.C. 2903.22 (menacing) reads in part:

"(A) No person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of such other person or member of his immediate family."

3  R.C. 2909.06 (criminal damaging or endangering) reads in part:

"(A) No person shall cause, or create a substantial risk of physical harm to any property of another without his consent:

"(1) Knowingly, by any means;

"(2) Recklessly, by means of fire, explosion, flood, poison gas, poison, radioactive material, caustic or corrosive material,  or other  inherently dangerous  agency or substance."

4  R.C. 2909.07 (criminal mischief) reads in part:

"(A) No person shall:

"(1) Without privilege to do so, knowingly move, deface, damage, destroy, or otherwise improperly tamper with the property of another."

5  R.C. 2917.21 (telephone harassment) reads in part:

"(A) No person shall knowingly make or cause to be made a telephone call, or knowingly permit a telephone call to be made from a telephone under his control, to another, if the caller does any of the following:

"* * *

"(3) During the telephone call, violates section 2903.21 of the Revised Code;

"(4) Knowingly states to the recipient of the telephone call that he intends to cause damage to or destroy public or private property, and the recipient of the telephone call, any member of the family of the recipient of the telephone call, or any other person who resides at the premises to which the telephone call is made owns, leases, resides, or works in, will at the time of the destruction or damaging be near or in, has the responsibility of protecting, or insures the property that will be destroyed or damaged;

"(5) Knowingly makes the telephone call to the recipient of the telephone call, to another person at the premises to which the telephone call is made, or to the premises to which the telephone call is made, and the recipient of the telephone call, or another person at the premises to which the telephone call is made, has previously told the caller not to call the premises to which the telephone call is made or not to call any persons at the premises to which the telephone call is made."

6  Webster's Ninth New Collegiate Dictionary (1984) 981, defines "reason" in part as "a rational ground or motive."

7  The Ohio statute on culpable mental states, R.C. 2901.22, reads:

"(A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

"(B) A person acts knowingly, regardless of his purpose,

when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

"(C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

"(D) A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist.

"(E) When the section defining an offense provides that negligence suffices to establish an element thereof, then recklessness, knowledge, or purpose is also sufficient culpability for such element. When recklessness suffices to establish an element of an offense, then knowledge or purpose is also sufficient culpability for such element. When knowledge suffices to establish an element of an offense, then purpose is also sufficient culpability for such element."

8  Black's makes the distinction as well; under the definition of "intent" it states: "Intent and motive should not be confused. Motive is what prompts a person to act, or fail to act. Intent refers only to the state of mind with which the act is done or omitted." Black's Law Dictionary (6 Ed. 1990) 810.

9  The Ohio statutes on aggravated burglary and burglary, respectively, state:

"2911.11 Aggravated burglary.

"(A) No person, by force, stealth, or deception, shall trespass in an occupied structure, as defined in section 2909.01 of the Revised Code, or in a separately secured or separately occupied portion thereof, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony, when any of the following apply:

"(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;

"(2) The offender has a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code, on or about his person or under his control;

"(3) The occupied structure involved is the permanent or temporary habitation of any person, in which at the time any person is present or likely to be present.

"(B) Whoever violates this section is guilty of aggravated burglary, an aggravated felony of the first degree."

"2911.12 Burglary.

"(A)  No person, by force, stealth, or deception, shall do any of the following:

"(1)  Trespass in an occupied structure or in a separately secured or separately occupied portion thereof, with purpose to commit therein any theft offense or any felony;

"(2) Trespass in a permanent or temporary habitation of any person when any person is present or likely to be present, with purpose to commit in the habitation any misdemeanor that is not a theft offense;

"(3) Trespass in a permanent or temporary habitation of any person when any person is present or likely to be present.

"(B) As used in this section:

"(1) 'Occupied structure' has the same meaning as in section 2909.01 of the Revised Code.

"(2) 'Theft offense' has the same meaning as in section 2913.01 of the Revised Code.

"(C) Whoever violates this section is guilty of burglary. A violation of division (A)(1) of this section is an aggravated felony of the second degree. A violation of division (A)(2) of this section is a felony of the third degree. A violation of division (A)(3) of this section is a felony of the fourth degree."

10 LaFave and Scott characterize purpose as a "medial end":

"* * * While some have taken the contrary view, it is undoubtedly better, for purposes of analysis, to view such crimes as not being based upon proof of a bad motive. This can be accomplished by taking the view that intent relates to the means and motive to the ends, but that where the end is the means to yet another end, then the medial end may also be considered in terms of intent." (Emphasis sic, footnotes omitted.) LaFave and Scott, 1 Substantive Criminal Law (1986) 320.

11 R.C. 2929.04 reads in part:

"(A) Imposition of the death penalty for aggravated murder is precluded, unless one or more of the following is specified in the indictment or count in the indictment pursuant to section 2941.14 of the Revised Code and proved beyond a reasonable doubt:

"(1) The offense was the assassination of the president of the United States or person in line of succession to the presidency, or of the governor or lieutenant governor of this state, or of the president-elect or vice president-elect of the United States, or of the governor-elect or lieutenant governor-elect of this state, or of a candidate for any of the foregoing offices. * * *

"(2) The offense was committed for hire.

"(3) The offense was committed for the purpose of escaping detection, apprehension, trial, or punishment for another offense committed by the offender.

"* * *

"(6) The victim of the offense was a peace officer, as defined in section 2935.01 of the Revised Code, whom the offender had reasonable cause to know or knew to be such, and either the victim, at the time of the commission of the offense, was engaged in his duties, or it was the offender's specific purpose to kill a peace officer."

12 The First Amendment to the United States Constitution reads:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right

of the people peaceably to assemble, and to petition the Government for a redress of grievances."

Section 11, Article I of the Ohio Constitution reads:

"Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press.  In all criminal prosecutions for libel, the truth may be given in evidence to the jury, and if it shall appear to the jury, that the matter charged as libelous is true, and was published with good motives, and for justifiable ends, the party shall be acquitted."

13  The parties do not contest that the predicate offenses are punishable.

14  As Judge West of the Franklin County Court of Common Pleas said:

"[T]his statute would enhance the punishment of a crime based upon the thoughts of the defendant, a hideous legal concept and inimical to American jurisprudence."  State v. Van Gundy (Mar. 28, 1990), Franklin C.P. No. 89-CR-11-5166, unreported.