OPINION
{¶ 1} Appellant Donterl M. Johnson (aka Dontrell Johnson) appeals his conviction and sentence on three counts of felonious assault with firearm specifications. The charges stem from an incident that occurred on September 27, 2002, in which Appellant and codefendant Rodney Carter fired multiple shots at a vehicle as it was leaving Six Brothers Market in Youngstown. There were three people in the vehicle, including a small child, and Appellant was charged with one count of felonious assault for each person in the vehicle. Appellant was convicted by a jury, and the court imposed three separate four-year prison terms, plus an additional three years for the firearm specification, all to be served consecutively, for a total of fifteen years in prison.
 {¶ 2} Appellant argues that the conviction is against the manifest weight of the evidence because the victims' testimony identifying Appellant as one of the shooters was not credible; because the state did not establish a motive; and because three of the four bullet shell casings introduced into evidence were not properly authenticated. These arguments are without merit because one of the victims had known Appellant for many years and clearly identified him as the shooter; because motive is not an element of the crimes that were charged; and because the shell casings were authenticated and were not the only evidence connecting Appellant's gun to the crime.
 {¶ 3} Appellant also argues that the three felonious assault charges were allied offenses of similar import, but because there were three victims of the shooting, the court was permitted to impose three separate penalties. *Page 2 
 {¶ 4} Appellant then challenges his sentence on a number of grounds. Appellant contends that the sentence is invalid because the trial court failed to notify him about postrelease control. Appellant is correct. The remedy for this error, according to State v. Jordan,104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, is to remand the matter for resentencing. Since the case must be remanded for resentencing, Appellant's other arguments are rendered moot. The conviction is hereby sustained, but Appellant's sentence is vacated and the case remanded for resentencing.
 FACTS AND HISTORY OF THE CASE {¶ 5} Late in the evening of September 27, 2002, Appellant and codefendant Rodney Carter fired multiple gunshots at a car being driven by Heather Freed. Sitting in the passenger seat was Rondell Gardner, who was Freed's boyfriend. Her 18-month old son was in the back seat. Freed and Gardner had driven to Six Brothers Market in Youngstown, to purchase a soft drink. As they entered the drive-thru beverage lane of Six Brothers Market, Gardner recognized Appellant standing in the well-lit parking lot. Gardner recognized Appellant because they knew each other in high school. Freed purchased the soft drink, and started to drive away. As she was leaving, she and Gardner heard someone screaming behind them: "Hey, hold up." (Tr., p. 265.) Gardner turned around and saw Appellant pulling something silver from his waistline. Gardner immediately pushed Freed's head down and told her to drive forward. Gardner saw Appellant and Carter each fire three gunshots at the car. *Page 3 
When the shooting started, Gardner was only five to seven steps away from Appellant. (Tr., p. 268.)
 {¶ 6} Freed drove to Gardner's grandmother's house, where they called the police. Gardner gave a statement to the police, and later went to the police station to identify the shooters in a number of photo lineups. Gardner identified both assailants from photo arrays at the police station.
 {¶ 7} Three days after the crime, police recovered four bullet casings near the crime scene. They also found a bullet slug on the floor of the back seat of Freed's car, just a few inches from where her son had been sitting. The police identified bullet holes all along the side and back of Freed's car, including multiple bullet holes in the car doors.
 {¶ 8} While investigating a subsequent incident a few days after the crime, in which codefendant Rodney Carter reported to police that he had been shot in the foot, police recovered a 9mm Hungarian Makarov semiautomatic pistol. This weapon was found lying on the ground near Six Brothers Market. At trial it was revealed that the Makarov pistol was responsible for the bullet slug found in the back seat of Heather Freed's car, and matched one of the fired shell casings. A state forensic expert testified that the other three casings were fired from one or more other weapons, and that at least two weapons were involved in the September 27, 2002, shooting.
 {¶ 9} Appellant was indicted on November 21, 2002, on three counts of felonious assault, R.C. § 2903.11(A)(2), a second degree felony, with firearm *Page 4 
specifications attached. Appellant was also charged with one count of having a weapon while under a disability, R.C. § 2923.13(A)(2), but this was later severed from the indictment. Codefendant Rodney Carter was charged with the same crimes.
 {¶ 10} On or about May 6, 2004, codefendant Rodney Carter pleaded guilty to the charges, and received an aggregate six-year prison term.
 {¶ 11} Appellant's case went to jury trial on June 30, 2004. Heather Freed and Rondell Gardner testified, along with a number of police officers and an expert from the Bureau of Criminal Investigation in Columbus. Appellant also testified in his own defense. Rondell Gardner identified Appellant as one of the shooters, and the physical and forensic evidence, including the bullets and the gun, were admitted into evidence. At trial, Appellant acknowledged his presence at Six Brothers Market with Rodney Carter on the night of the crime, but stated that Carter was the only person who shot at the victims. (Tr., p. 432.)
 {¶ 12} The jury convicted Appellant on the three felonious assault charges with the gun specifications. The court held a separate sentencing hearing on July 26, 2004. The court's judgment entry, filed July 29, 2004, sentenced Appellant to four years on each of the three counts, and three years for one gun specification, all to be served consecutively, for an aggregate sentence of 15 years in prison.
 {¶ 13} Appellant filed this timely appeal on August 27, 2004. The assignments of error regarding sentencing will be taken out of order for ease in analysis.
 ISSUES CONCERNING THE CONVICTION ASSIGNMENT OF ERROR NO. 1 *Page 5 {¶ 14} "THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND MUST BE REVERSED AS A MATTER OF LAW."
 {¶ 15} Appellant argues that the verdict is not supported by the manifest weight of the evidence because: 1) the crime took place at night on an unlit street, thus making Rondell Gardner's eyewitness identification testimony unbelievable; 2) the state did not establish a motive for the crime; and 3) three of the four shell casings were not properly authenticated because they could not be identified as shells fired from Appellant's gun or fired on the night of the crime.
 {¶ 16} The issue of whether a trial court judgment is against the manifest weight of the evidence was addressed in State v. Thompkins
(1997), 78 Ohio St.3d 380, 678 N.E.2d 541. Thompkins distinguished between sufficiency of the evidence and weight of the evidence: " ` "[Sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' " Id. at 386, quoting Black's Law Dictionary (6 Ed.1990) 1433; Crim.R. 29(A).
 {¶ 17} Although a court of review may find sufficient evidence to support the verdict, it may also conduct a further review of the manifest weight of the evidence. Id at 387. "Weight of the evidence concerns `the inclination of the greater amount of credibleevidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount ofcredible evidence sustains the issue which is to be established *Page 6 
before them. Weight is not a question of mathematics, but depends on itseffect in inducing belief " (Emphasis in original.) Id., quoting Black's Law Dictionary (6 Ed.1990) 1594.
 {¶ 18} When reviewing a trial court's decision on manifest weight of the evidence, a court of appeals acts as a "thirteenth juror," especially when it reviews the trial court's resolution of conflicts in testimony. Id. at 387, citing Tibbs v. Florida (1982), 457 U.S. 31, 42,102 S.Ct. 2211, 72 L.Ed.2d 652. " The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " Id., quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 19} Appellant contends that Rondell Gardner's eyewitness testimony was somehow incredible. It is true that the crime took place at night, but Gardner testified that he saw Appellant before the crime occurred in the parking lot of Six Brothers Market. (Tr., p. 263.) The parking lot was well-lit. (Tr., p. 268.) Mr. Gardner knew Appellant from high school, and was not simply identifying him as a stranger. (Tr., pp. 264, 287.) According to Gardner's testimony, he was a passenger in a vehicle being driven by his girlfriend Heather Freed. As they were leaving the drive-thru market, Gardner heard Appellant calling to him. Gardner turned around to look at *Page 7 
Appellant, who was only five to seven steps away from the car. (Tr., p. 268.) There is nothing particularly incredible about any of this testimony.
 {¶ 20} As to the argument that the state failed to prove a motive for the crime, Appellee is correct that motive is not an element of the crime of felonious assault and generally is not a necessary aspect of the state's evidence in a criminal case. "Motive, in criminal law, is not an element of the crime." State v. Wyant (1992), 64 Ohio St.3d 566,571, 597 N.E.2d 450. "Motive is a mental state which induces an act; it is a circumstantial fact used to strengthen an inference, drawn from other evidence, that an act was done." State v. Nichols (1996),116 Ohio App.3d 759, 764, 689 N.E.2d 98. The defendant's motive can only corroborate other evidence, and cannot by itself establish guilt. Id. at 765. A person's motive for a crime, i.e., the reason why the crime was committed, is distinct from the defendant's culpable mental state, or criminal intent, which normally is an essential element of a crime. " `Intent' refers to the actor's state of mind or volition at the time he acts. Did A intend to kill B when A's car hit B's, or was it an accident? This is not the same as A's motive, which is why A intentionally killed B. When A murders B in order to obtain B's money, A's intent is to kill and the motive is to get money. One can have motive without intent, or intent without motive. For instance, the wife of a wealthy but disabled man might have a motive to kill him, and yet never intend to do so. A psychopath, on the other hand, may intend to kill and yet have no motive." (Citations omitted.) Wyant, supra,64 Ohio St.3d at 571, 597 N.E.2d 450. *Page 8 
 {¶ 21} There is substantial evidence establishing Appellant as one of the shooters, and the state simply did not need to rely on the much more nebulous concept of motive to bolster its case. Evidence of motive is more appropriate in weak or doubtful cases, not for a case that, "thoroughly and completely establishes the guilt of the accused," such as in the instant case. State v. Lancaster (1958), 167 Ohio St. 391,397, 149 N.E.2d 157. Appellant was identified at the scene of the crime and was seen firing a gun at the car. One of the victims established eyewitness identification. One of the weapons used in the crime was recovered, and it was made clear by the state's forensic expert that at least two weapons were used in the shooting. Although it may be interesting to know what the motive was for the shooting, it was not needed to support the conviction.
 {¶ 22} Appellant's third argument involves a chain of custody question, but there is nothing in the record revealing any problem with the chain of custody of the various bullet pieces found at the crime scene, and Appellant does not point to anything in the record that establishes a chain of custody error. Appellant really seems to be challenging the relevance of the additional shell casings, not their authentication or chain of custody. Appellant is correct that, by themselves, the three unidentifiable shell casings are of limited value in the state's case. When coupled with the other evidence, though, their potential relevance increases. The other evidence established that a shooting took place, that multiple shots were fired at a vehicle, that it occurred at Six Brothers Market, that there was an eyewitness who could identify Appellant, and that a 9mm Makarov pistol was one of the weapons *Page 9 
used. There were multiple bullet holes in the victim's car, and the victims heard or saw multiple shots being fired, so it would be expected that multiple bullet casings or slugs would be found in the area. The fact that four bullet casings were found enhances the value of the other evidence, even if all the casings could not be clearly identified. The bullet casings did help establish that at least two weapons were involved in the shooting, clearly discrediting Appellant's testimony that Rodney Carter was the sole shooter. The evidentiary weight of the extra three bullet casings was something for the jury to determine, but it is clear that the bullet casings were relevant in the context of all other evidence presented.
 {¶ 23} A review of the manifest weight of the evidence involves all of the evidence and the reasonable inferences to be drawn from this evidence, and not just one piece of evidence in isolation. State v.Issa (2001), 93 Ohio St.3d 49, 67, 752 N.E.2d 904. Based on all of the evidence presented, there is nothing indicating that the jury lost its way when it convicted Appellant on the three felonious assault charges, and Appellant's manifest weight of the evidence argument is meritless.
 ASSIGNMENT OF ERROR NO. 2 {¶ 24} "THE APPELLANT'S CONVICTIONS AND CONSECUTIVE SENTENCES FOR THREE (3) COUNTS OF FELONIOUS ASSUALT ARE IMPROPER AS THE THREE (3) COUNTS OF FELONIOUS ASSAULT ARE ALLIED OFFENSES OF SIMILAR IMPORT."
 {¶ 25} Appellant argues that, because the three counts of felonious assault were allied offenses of similar import, he only committed a single punishable offense *Page 10 
when he shot at a vehicle containing three occupants. Appellant is confused when he refers to "allied offenses of similar import" because he was not charged with allied crimes, but with three counts of the same crime. This is addressed in R.C. § 2941.25(B): "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 26} The state's case was based on proof that Appellant committed three acts of felonious assault when he fired multiple shots at a car with three passengers in it. Appellee contends that a defendant may be convicted and sentenced for multiple crimes when one course of conduct harms more than one person or puts more than one person at risk. See, e.g., State v. Murray, 156 Ohio App.3d 219, 2004-Ohio-654,805 N.E.2d 156, ¶ 23 (four counts of felonious assault were of dissimilar import because defendant fired shots at a van carrying four people); State v.Phillips (1991), 75 Ohio App.3d 785, 790, 600 N.E.2d 825 (five counts of felonious assault were of dissimilar import because five persons were endangered in the drive-by shooting incident).
 {¶ 27} Appellant was charged with three counts of felonious assault pursuant to R.C. § 2903.11(A)(2), which states:
 {¶ 28} "(A) No person shall knowingly do either of the following:
 {¶ 29} "* * * *Page 11 
 {¶ 30} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 31} Felonious assault requires proof of the culpable mental state of "knowingly," defined in R.C. § 2901.22(B) as: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 32} It is generally accepted that "[t]he act of firing a weapon in a place where one or more persons face a risk of injury supports an inference that a defendant acted knowingly." State v. Booth (1999),133 Ohio App.3d 555, 562-563, 729 N.E.2d 406.
 {¶ 33} Courts have regularly held that separate animus can be inferred when a defendant is charged with the same offense against different victims during the same course of conduct. See, e.g., State v.Garrison (1997), 123 Ohio App.3d 11, 16, 702 N.E.2d 1222. For example, in State v. Gregory, the Twelfth District Court of Appeals dealt with a situation similar to the instant case, in which two penalties were imposed on two charges of felonious assault where the evidence showed that the defendant shot at two police officers in a police cruiser. The Twelfth District reasoned: "Appellant was aware of the presence of two potential victims in the car at which he fired multiple gunshots. Since appellant attempted to cause physical harm to two separate victims, he could properly be convicted of two counts of felonious assault and sentenced to serve consecutive sentences on each count." State v.Gregory *Page 12 
(1993), 90 Ohio App.3d 124, 129, 628 N.E.2d 86. The aforementionedMurray and Phillips cases, and the many other cases cited by Appellee, support this same conclusion.
 {¶ 34} This Court itself has held: "While Appellant committed his crime as part of a single course of misconduct, the felonious assault convictions in this case plainly involved two distinct victims. Where a defendant commits the same offense against different victims during the same course of conduct, a separate animus exists for each offense."State v. Dubose, 7th Dist. No. 00-C.A.-60, 2002-Ohio-3020, ¶ 53.
 {¶ 35} The Ohio Supreme Court applied similar reasoning in a case involving, inter alia, six counts of aggravated arson. The defendant had set fire to his home and six people were in the house at the time. The defendant was convicted and punished for all six counts of aggravated arson. The Supreme Court held: "Even though appellant set only one fire, each aggravated arson count recognizes that his action created a risk of harm to a separate person." State v. Franklin, 97 Ohio St.3d 1,2002-Ohio-5304, 776 N.E.2d 26, ¶ 48.
 {¶ 36} Appellant cites State v. Cartellone (1981), 3 Ohio App.3d 145,444 N.E.2d 68, as rebuttal to the overwhelming caselaw cited above. TheCartellone case involved three counts of felonious assault arising out of one shooting incident, and the issue on appeal was whether the defendant had separate animus such that he could be punished for all three counts. The Eighth District Court of Appeals held that, based on the facts of the case, the defendant had only intended one person to be the victim, and that only one penalty could be imposed for the three counts. The *Page 13 Cartellone case can be readily distinguished from the matter at bar, though, because in Cartellone the three purported victims were not near each other when the crime occurred. The intended victim, Armand Mastandrea, was standing in the driveway while two other bystanders were behind the front screen door of the house. The defendant fired his weapon from a moving vehicle specifically at Mr. Mastandrea. There had been previous encounters and arguments between the defendant and Mr. Mastandrea earlier in the day and immediately before the shooting. Mastandrea himself testified that he was the intended target of the shooting. He stopped his vehicle at his ex-wife's house, and got out when Appellant and another codefendant arrived. The ex-wife and Mastandrea's daughter were inside the house and heard shouting. They went to the door to see what was happening. It was shortly after this that the assailant got into his car, and as he was driving away he shot at Mastandrea, who was standing some distance from the other bystanders. The Eighth District Court of Appeals concluded that the defendant did not know the bystanders were there, had clearly intended the gunshots to be directed at Mastandrea only, and had not caused any harm to anyone else. Therefore, his only offense was against Mastandrea.
 {¶ 37} In the instant case, Appellant fired multiple shots at a slowly moving car with three people in it, including an 18-month old child. There is no indication that the shots were directed at any one particular occupant of the car, but rather, were generally aimed at the vehicle and the passengers in the vehicle. There is no evidence of any prior antagonism between Appellant and any of the victims, and *Page 14 
there is no reason to suspect that the sole object of the shooting was to injure one particular person in the vehicle. Even if we accepted theCartellone reasoning (which appears to run counter to most of the caselaw on this subject), the facts of the instant case would need to be much different in order for Cartellone to apply.
 {¶ 38} Appellant's arguments are without merit, and this assignment of error is overruled.
 ISSUES CONCERNING THE SENTENCE ASSIGNMENT OF ERROR NO. 4 {¶ 39} "THE TRIAL COURT FAILED TO COMPLY WITH THE PROVISIONS OFOHIO REVISED CODE SEC. 2929.19(B)(3) AND STATE V. JORDAN, 104 OHIO ST.3D 21(2004), [sic] BY FAILING TO NOTIFY THE APPELLANT AT SENTENCING ABOUT POST-RELEASE CONTROL AND FAILING TO INCORPORATE THAT NOTICE INTO ITS SENTENCING ENTRY. THEREFORE, APPELLANT'S SENTENCE MUST BE VACATED AND THIS MATTER MUST BE REMANDED TO THE TRIAL COURT FOR RESENTENCING."
 {¶ 40} Appellant argues that, based on R.C. §§ 2929.19(B)(3)(c) and2967.28, the trial court is required to notify him that he was automatically subject, pursuant to those statutes, to postrelease control. At the time Appellant was sentenced, R.C. § 2929.19(B)(3)(c) required the trial court to, "[n]otify the offender that the offender will be supervised under section 2967.28 of the Revised Code after the offender leaves prison if the offender is being sentenced for a felony of the first degree or second *Page 15 
degree, for a felony sex offense, or for a felony of the third degree in the commission of which the offender caused or threatened to cause physical harm to a person[.]"
 {¶ 41} The version of R.C. § 2967.28(B) in effect when Appellant was sentenced states: "Each sentence to a prison term for a felony of the first degree, for a felony of the second degree, for a felony sex offense, or for a felony of the third degree that is not a felony sex offense and in the commission of which the offender caused or threatened to cause physical harm to a person shall include a requirement that theoffender be subject to a period of post-release control imposed by the parole board after the offender's release from imprisonment." (Emphasis added.)
 {¶ 42} The Ohio Supreme Court has long held that the notice requirement of R.C. § 2967.28 is mandatory: "[W]e hold that pursuant to R.C. 2967.28(B) and (C), a trial court must inform the offender at sentencing or at the time of a plea hearing that post-release control is part of the offender's sentence." Woods v. Telb (2000),89 Ohio St.3d 504, 513, 733 N.E.2d 1103.
 {¶ 43} Appellant correctly cites State v. Jordan, 104 Ohio St.3d 21,2004-Ohio-6085, 817 N.E.2d 864, for the holding that, "[b]ecause a trial court has a statutory duty to provide notice of postrelease control at the sentencing hearing, any sentence imposed without such notification is contrary to law." Id. at ¶ 23. Jordan involved a situation in which the postrelease control provision was in the court's judgment entry but was not discussed at the sentencing hearing. The Supreme Court held that the requirement to notify the defendant of postrelease control means giving notice at the sentencing hearing, as well as including similar notice in the court's sentencing *Page 16 
journal entry. Jordan also held that the remedy for failing to give proper notice of postrelease control is a new sentencing hearing. Id. at ¶ 28.
 {¶ 44} In Jordan, the Supreme Court considered whether the absence of proper notice of postrelease control simply meant that postrelease control was not part of the penalty imposed and could be ignored. Id.Jordan rejected this as a viable interpretation of the statutes. The state legislature gave the Adult Parole Authority the right to impose postrelease control, and it is not in the power of the trial courts to remove that right by simply failing to give proper notice to the defendant. Thus, a Jordan error, if raised by a criminal defendant, requires a completely new sentencing hearing.
 {¶ 45} There is no mention of postrelease control in the trial court's judgment or in the trial transcripts, and therefore, Appellant's assignment of error is correct and he is entitled to resentencing.
 ASSIGNMENT OF ERROR NO. 3 {¶ 46} "THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES UPON THE APPELLANT IN THAT THE SENTENCE, PURSUANT TO OHIO REVISED CODE SEC.2929.11(B), [sic] WAS NOT CONSISTENT WITH THE SENTENCE IMPOSED UPON THE CO-DEFENDANT FOR THE IDENTICAL CRIMES AND THE COURT FAILED TO MAKE THE REQUISITE FINDINGS RELATING TO CONSECUTIVE SENTENCES PURSUANT TOOHIO REVISED CODE SECTIONS 2929.12, 2929.19 AND STATE V. COMER, 99 OHIO ST.3D 463 (2003)." *Page 17 
 {¶ 47} This assignment of error has two parts. First, Appellant argues that his sentence is disproportionate to that of his codefendant Rodney Carter, who was charged with the same crimes. This argument is largely moot, since the matter will be remanded for a full resentencing hearing and a completely new sentence, but the issue Appellant raises does merit a few comments. R.C. § 2929.11 states that a sentencing judge should impose a sentence, "consistent with sentences imposed for similar crimes committed by similar offenders." Appellant does not raise any constitutional arguments regarding proportionality, but simply asserts that, under the statute, his sentence is inconsistent with that of Rodney Carter and should be modified.
 {¶ 48} Appellant seems to be arguing that two codefendants charged and convicted of the same crimes must receive the same or very similar sentences, without regard to any other factors. This is an untenable position. Determining whether the defendants and their crimes are "similar" under R.C. § 2929.11 may involve the weighing of many factors. Although crimes may be "similar" in the sense of being based on the same statutory provision, they may not be similar in how they were carried out. Furthermore, two defendants may be similar in some respects, such as being in the same place and using the same weapons to commit a crime, but be very dissimilar in other respects. For example, in the instant case Appellant has at no time admitted his guilt, while codefendant Rodney Carter entered a negotiated plea, admitting his guilt and his participation in the crimes. (Sentencing Tr., p. 13.) This distinction may be an important factor in sentencing. Furthermore, the record *Page 18 
indicates that Rodney Carter was not previously convicted of any similar offenses, whereas Appellant had a prior conviction for complicity to felonious assault and had served nine years in prison. (Sentencing Tr., p. 14.) These facts further separate the two defendants.
 {¶ 49} The trial court went to great lengths to make it clear that he was not punishing Appellant simply because he exercised his right to take the case to trial, and the judge explained the factors that resulted in Appellant's prison term being more severe than that imposed on codefendant Rodney Carter. (Sentencing Tr., p. 13.) It is clear from the record that many factors distinguish Appellant from Rodney Carter, and therefore, the trial court was not required to give both defendants the same sentence.
 {¶ 50} The other issue that Appellant raises is that the trial court failed to make mandatory statutory findings to support consecutive sentences, as found in R.C. § 2929.14(E)(4). Because the case will be remanded for resentencing, the trial court will have full discretion to impose a new sentence based on the applicable felony sentencing statutes and current caselaw. This issue is, therefore, moot.
 {¶ 51} We have sustained Appellant's fourth assignment of error. Appellant's other arguments are without merit or are rendered moot. We affirm Appellant's conviction in full. However, his sentence is hereby vacated and the matter is remanded for resentencing consistent with this Opinion. The trial court must include the statutory notices of postrelease control at the sentencing hearing and in the sentencing judgment entry as required by R.C. §§ 2929.19(B)(3)(c) and 2967.28. *Page 19 
Donofrio, J., concurs.
 DeGenaro, P.J., concurs. *Page 1