[No. 27453-8-I.   Division One.   October 5, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL ROSS HANSEN, *Appellant*.

*Gregory M. Miller* and *Hanson & Dionne,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Theresa Fricke, Senior Prosecuting Attorney,* for respondent.

PEKELIS, J. — Michael Ross Hansen appeals from his conviction on one count of intimidating a judge, RCW 9A.72-.160. Hansen contends that the trial court erred in finding that he had "direct[ed] a threat to a judge" within the meaning of the statute. He also challenges the sufficiency of the evidence supporting his conviction. Finally, Hansen asserts that the court improperly admitted testimony protected by the attorney-client privilege. We affirm.

I

In January of 1988, Hansen was convicted of a felony and sentenced to 2 years in prison by Judge Robert Dixon. Upon his release, Hansen contacted several lawyers in an effort to bring a civil action against Judge Dixon, the prosecutor and the public defender.

On March 6, 1990, Hansen telephoned Chris Youtz, an attorney whose name Hansen obtained from a referral service. Hansen told Youtz that he had been conspired against at trial and was wrongly sent to prison by a "kangaroo court". Although Hansen did not mention Judge Dixon specifically, he did refer to the prosecutor and public defender by name. Believing that a civil rights action under 42 U.S.C. § 1983 would be fruitless, Youtz told Hansen that he would not handle the case. Youtz explained, however, that he did not practice criminal law and that Hansen could always consult an attorney with more expertise in that area or contact the lawyer referral service again. Upon hearing this, Hansen became "very upset" and stated:

> "When you say I am not going to get any help from the Bar, I am not going to get any help from anybody". . . . "What I am going to do," . . . "I am going to get a gun and blow them all away, the prosecutor, the judge and the public defender."

After speaking to Youtz for several more minutes, Hansen ended the conversation. Youtz, who was concerned, consulted with the bar association and his law partner, and then telephoned the prosecutor. When the prosecutor told him that Judge Dixon had presided over Hansen's trial, Youtz telephoned the judge and described his conversation with Hansen. Youtz later explained that he:

> was convinced that some action very well could be taken against these individuals, the prosecutor, the judge and the public defender, and . . . it was that concern that helped me call them and warn them.

After an investigation, Hansen was arrested and charged with intimidating a judge, RCW 9A.72.160. Prior to trial, Hansen moved to preclude all statements made during his telephone conversation with Youtz, claiming that they were protected by the attorney-client privilege. The trial court denied the motion, however, concluding that there was no attorney-client relationship when the threat was made and that, in any event, the statements were made in the furtherance of future criminal activity. Hansen was subsequently convicted in a 1-day bench trial. The court found that Hansen indirectly communicated a threat to Judge Dixon because the judge had sentenced him to prison.

## II

On appeal, Hansen contends that the trial court erred in determining that he "direct[ed] a threat to a judge" within the meaning of RCW 9A.72.160. He asserts that the statute only criminalizes threats that the maker intends or knows will reach the judge. Because he never intended for Youtz to actually convey the threat to Judge Dixon, Hansen claims that his conviction cannot be sustained. In response, the State essentially claims that RCW 9A.72.160 is a strict liability statute and thus only requires the State to prove that Hansen made a threat against Judge Dixon and that he did so because the latter had sentenced him to prison.

We note at the outset that the State's position is untenable. First, the State incorrectly claims support for its posi-

tion in our recent decision in *State v. Kepiro*, 61 Wn. App. 116, 810 P.2d 19 (1991). In *Kepiro*, the only other published opinion interpreting RCW 9A.72.160, we held that the State need not prove that the defendant actually intended *to cause* the threatened harm. *Kepiro*, 61 Wn. App. at 123. That case, however, has nothing to do with Hansen's claim here that the State must prove that he intended the threat *to reach* the judge. Obviously, the issues are entirely separate. Furthermore, the State's argument is belied by the fact that at trial the deputy prosecutor acknowledged that proof of the defendant's knowledge or intent to have the threat reach the judge was an element of the crime.[1]

Accordingly, the critical issue in this case is what the Legislature intended when it used the verb "directs" in RCW 9A.72.160. The statute provides:

(1) A person is guilty of intimidating a judge if a person *directs a threat to a judge* because of a ruling or decision of the judge in any official proceeding, or if by use of a threat directed to a judge, a person attempts to influence a ruling or decision of the judge in any official proceeding.
(2) "Threat" as used in this section means:
(a) To communicate, directly or indirectly, the intent immediately to use force against any person who is present at the time; or
(b) Threats as defined in RCW 9A.04.110(25).

(Italics ours.)

Former RCW 9A.04.110(26)[2] provides in part:

"Threat" means to communicate, directly or indirectly the intent:
(a) To cause bodily injury in the future to the person threatened or to any other person; . . .

---

[1]"DEPUTY PROSECUTOR: I think that you would have to assume that whenever someone communicates to an officer of the law an intent to kill a judge, one is assumed to at least entertain the possibility that that threat is going to be communicated to the court. *It's difficult to believe that at least the mental element of knowledge hasn't been conclusively proved, if not intent.*

"COURT: I agree with [the deputy prosecutor] on all matters." (Italics ours.)

[2]Effective July 1, 1988, RCW 9A.04.110(26) was renumbered as RCW 9A.04-.110(25). Laws of 1988, ch. 158, § 1.

■ Nowhere in the statute is the word "directs" defined. Absent a statutory definition, a term is to be given its plain and ordinary meaning. *American Legion Post 32 v. Walla Walla*, 116 Wn.2d 1, 8, 802 P.2d 784 (1991). In ordinary usage, "direct[s]" means "to cause to turn, move, or point undeviatingly or to follow a straight course *with a particular destination or object in view*: . . . to dispatch, aim, or guide usu. *along a fixed path*". (Italics ours.) *Webster's Third New International Dictionary* 640 (1969).

■ Applying this definition to RCW 9A.72.160, we conclude that the word "directs" means that the threat must be made with the intention or knowledge that it will reach the "particular destination or object in view", *i.e.*, the judge. Any other interpretation would contradict the common understanding of "directs" and would not promote the statute's purpose of punishing those who seek to intimidate a judicial officer.

■ ■ Having so decided, however, we do not conclude that this intention can be proved only by reference to the defendant's subjective state of mind. Hansen's claim seems to be that because the only evidence on the issue was his own testimony that he did not intend the threat to be conveyed to Judge Dixon, there was insufficient evidence to convict him. We do not agree. Under certain circumstances a trier of fact could well infer that the person making the threat intended to reach the judge. Here, Hansen communicated an unequivocal threat against the judge who presided over his trial to Youtz, an officer of the court, right after Youtz told him he would not represent him. This constituted sufficient evidence from which to find that Hansen expected that his threat to "blow away" the judge would be conveyed to that judge. Thus, viewing the evidence in a light most favorable to the State, the trial court did not err in holding that Hansen intentionally "direct[ed]" Youtz to convey the threat to Judge Dixon under RCW 9A.72.160.[3]

---

[3]Hansen also contends that there is insufficient evidence to show that he directed a threat to Judge Dixon "because of a ruling or decision of the judge in

## III

We next address Hansen's alternative contention that the trial court erred in permitting Youtz to testify. He argues that the attorney-client privilege should have been applied to exclude his telephone conversation with Youtz.

■ The existence of an attorney-client relationship " 'turns largely on the client's subjective belief that it exists'." *Bohn v. Cody*, 119 Wn.2d 357, 363, 832 P.2d 71 (1992) (quoting *In re McGlothlen*, 99 Wn.2d 515, 522, 663 P.2d 1330 (1983)). However, the client's subjective belief is not controlling unless it is reasonably formed based on the attending circumstances, including the attorney's words or actions. *Cody*, 119 Wn.2d at 363. Thus, where a person makes disclosures to an attorney after the attorney has refused representation, the privilege may not be claimed. 1 J. Strong, *McCormick on Evidence* § 88, at 322 n.3 (4th ed. 1992); 8 J. Wigmore, *Evidence* § 2304, at 586 (1961).

Here, the trial court first determined that no attorney-client relationship existed between Hansen and Youtz. We agree. Youtz told Hansen that he would not handle the case. *After* hearing this, Hansen became "quite upset" and threatened to "blow [Judge Dixon] away." Under these circumstances, there was no attorney-client relationship when Hansen made the threat.

■ Furthermore, even if we were to assume the existence of an attorney-client relationship, it is well settled that the privilege does not apply to communications between an attorney and client where the client's purpose is to further a future crime or fraud. *State v. Richards*, 97 Wash. 587, 167 P. 47 (1917); *Whetstone v. Olson*, 46 Wn. App. 308, 310, 732 P.2d 159 (1986); *State v. Metcalf*, 14 Wn. App. 232, 239-40, 540 P.2d 459 (1975), *review denied*, 87 Wn.2d 1009 (1976). The rationale underlying this exception was succinctly stated by the court in *Dike v. Dike*, 75 Wn.2d 1, 14, 448 P.2d 490 (1968):

---

any official proceeding". RCW 9A.72.160. This claim is meritless. Hansen told Youtz that the judge, prosecutor, and defense attorney had conspired against him at trial and thus were responsible for his wrongful imprisonment. Clearly, Hansen's threat was motivated by his belief that, "in discharging his official role as a judge", Judge Dixon was a participant in the wrong inflicted upon him.

The necessity for unhindered communication between attorney and client is outweighed, not so much by society's interest in having the truth disclosed as to crimes already completed, but rather by society's interest in protecting the present and future victims of the client. In other words, although we will not discard the privilege when the sole purpose in doing so is merely to punish the client for a wrong committed in the past, nevertheless we will not allow the shield of silence constructed by the privilege to aid the client in continuing his wrongdoing at the expense of other members of society.

In this case, Hansen communicated his threat to "get a gun and blow [the judge] away" to Youtz. Even if an attorney-client relationship existed here, the threat was sufficiently serious to justify discarding the privilege in order to protect Hansen's potential victims. Accordingly, the trial court correctly determined that the attorney-client privilege would not, in any case, apply to Hansen's statements to Youtz.

Affirmed.

AGID, J., concurs.

SCHOLFIELD, J. (dissenting) — I respectfully dissent.

RCW 9A.72.160 requires as an element of the offense that the defendant direct a threat to a judge.

Under RCW 9A.04.110(25), threat means "to communicate, directly or indirectly the intent . . . [t]o cause bodily injury in the future to the person threatened".

The majority opinion at page 516 acknowledges that the word "directs" means that the threat must be made with the intention or knowledge that it will reach the judge. My disagreement with the majority opinion is with the conclusion that merely because the "threat" was stated to a lawyer, this was sufficient evidence to support a finding that Hansen intended his threat to be conveyed to the judge. Neither the circumstances nor the content of the conversation with Youtz supports an inference of the required intent. The circumstances, in fact, suggest otherwise.

Hansen had contacted several lawyers prior to calling Youtz, all in an effort to find a lawyer who would bring a civil action for damages against the prosecutor, defense attorney, and Judge Dixon. When Youtz told Hansen he would not handle the case, Hansen reacted emotionally from his disappointment and immediately made the statement that since he could not get any help from the bar, he was going to "get a gun and blow them all away, the prosecutor, the judge and the public defender." Through the entire conversation with Youtz, Judge Dixon's name was never mentioned.

In speaking to Youtz, it would not be unreasonable for Hansen to assume that his conversation was confidential and therefore would not be directed to the judge or anyone else. I agree that technically an attorney-client relationship did not exist. That is irrelevant, however, to a reasonable belief by Hansen that he was engaging in a confidential conversation.

The evidence simply does not support a finding that Hansen intended his remarks to be communicated to Judge Dixon. I would agree that if there was objective evidence showing that he did intend his remarks to reach Judge Dixon, he could be convicted despite his testimony that he did not intend his remarks to ever be communicated to Judge Dixon. The weakness in the State's case here is a total absence of any objective evidence from which the finder of fact can find an intent by Hansen that his remarks would reach Judge Dixon. Without such evidence, there is no basis on which the court can find that he directed a threat to a judge.

I would reverse and dismiss for insufficiency of the evidence to support the charge.

Reconsideration denied November 5, 1992.

Review granted at 121 Wn.2d 1007 (1993).